***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. An employee-employer relationship existed at the time of the alleged accident.
2. Toastmaster is the employer-defendant.
3. Corporate Claims Management, Inc. is the insurance carrier for defendant-employer.
4. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged incident, employing the requisite numbers of employees to be bound under the provision of the Act.
5. Plaintiff's average weekly wage can be determined from the completed Industrial Commission Form 22 wage chart.
6. The following exhibits were stipulated into evidence:
 a. Plaintiff's medical records which were marked as Stipulated Exhibit 1.
 b. Vocational rehabilitation reports which were marked as Stipulated Exhibit 2.
 c. Plaintiff's answers to interrogatories which were marked as Stipulated Exhibit 3.
The Commission further receives into evidence as part of the stipulated vocational rehabilitation records a letter dated June 15, 2001 from plaintiff's attorney to Jim Ratliff and a letter dated June 25, 2001 from Mr. Ratliff to plaintiff's attorney.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff began working for defendant-employer on June 16, 1971 assembling and packing timers. Plaintiff began to suffer from the compensable occupational diseases of bilateral carpal tunnel syndrome and left hand trigger finger on or about March 19, 1997.
2. Plaintiff received treatment from Dr. Mark Brenner, an orthopedic surgeon. Plaintiff underwent carpal tunnel release surgery and surgical decompression for the third and fourth fingers of the left hand. Dr. Brenner assigned a five percent permanent partial impairment rating to the left upper extremity and a three percent permanent partial impairment rating to the right hand in November of 1999. In a January 3, 2001 letter Dr. Brenner projected a three percent permanent impairment rating each for the third and fourth fingers on her left hand.
3. Dr. Brenner assigned restrictions of no repetitive pushing, pulling, griping, or pinching and no production-type job. Dr. Brenner stated that housekeeping was probably a good job for plaintiff with her upper extremity problems because someone who does one task and then stops and does another task has much less chance of developing carpal tunnel syndrome or aggravating carpal tunnel syndrome than someone who does the same task over and over all day.
4. Prior to August 25, 2000 plaintiff was employed in a full-time light duty capacity with defendant-employer. Plaintiff was laid off on August 25, 2000 as part of a company-wide layoff. Defendants reinstated plaintiff's temporary total disability benefits and have continued to pay plaintiff all workers' compensation benefits to which she is entitled.
5. Defendants assigned Jim Ratliff with Carolina Case Management to initiate vocational rehabilitation for plaintiff. Mr. Ratliff met with plaintiff nine times and contacted 70 to 80 employers and believed there are unskilled labor positions with comparable wages within a reasonable area surrounding plaintiff's residence. Mr. Ratliff believes that plaintiff could obtain a job, assuming the job duties are approved by Dr. Brenner as being within plaintiff's permanent restrictions. Plaintiff can read and write, but reads and spells at a third grade level and is at an eighth grade level in math. At the time Mr. Ratliff was working with plaintiff, she was enrolled in adult basic education classes at the local community college. Plaintiff followed up on 19 of the 43 job leads provided by Mr. Ratliff.
6. Plaintiff, on the advice of her counsel, wrote two letters to Mr. Ratliff saying she was disappointed with the job leads he had been providing because she thought they were outside her restrictions and not helping her rehabilitation. Plaintiff also indicated a concern with traveling away from her home due to the poor condition of her car as well as not feeling safe traveling these distances alone. Plaintiff alleges her automobile is unfit to travel out of town for job searches; however, plaintiff offered no evidence to verify the condition of her vehicle. Even if plaintiff's vehicle is in poor condition and would prevent plaintiff from traveling safely, defendants are entitled to have an opportunity to assist plaintiff in resolving her transportation needs and to continue to pursue vocational rehabilitation efforts. The Commission finds that a job search, particularly in a rural area, requiring a commute of 25-30 miles each way is not unreasonable.
7. Following the hearing before the Deputy Commissioner, on June 15, 2001 plaintiff's counsel sent a letter to rehabilitation consultant Jim Ratliff in which plaintiff's counsel wrote, "Please allow this letter to advise you that authorization to have contact with my client is no longer permitted." Plaintiff's counsel unilaterally terminated vocational rehabilitation without an order of the Industrial Commission.
8. By order dated July 17, 2001 Deputy Commissioner Hall ordered plaintiff to comply with vocational rehabilitation services. Defendants filed one Form 24 application on August 2, 2001 on the grounds that plaintiff unjustifiably refused to comply with vocational rehabilitation in violation of the Commission order. Defendants filed a second Form 24 application on August 10, 2001 on the grounds that plaintiff unjustifiably refused to return to suitable employment.
9. The Form 24 applications involved issues not presented by the evidence in the record before Deputy Commissioner Hall, and therefore Deputy Commissioner Hall appropriately referred the motion to the Executive Secretary for decision utilizing the normal Form 24 procedures.
10. On September 26, 2001 Agency Legal Specialist Elizabeth M. Maddox filed an administrative order in which she authorized defendants to suspend compensation benefits to plaintiff as of August 2, 2001. Plaintiff filed a motion for reconsideration of this decision which was denied. It appears from the record that plaintiff intended to appeal this administrative decision as part of the appeal pending before the Full Commission. However, the parties have had no opportunity to present evidence on the issues raised by the Form 24 applications. Appeal properly lies, pursuant to Commission Rule 703, with the Deputy Commissioner Section of the Commission.
11. Plaintiff contends that she is permanently and totally disabled and unable to earn wages. However, plaintiff has not met her burden of proof in that regard. Due to plaintiff's failure to comply with vocational rehabilitation, it is unclear whether plaintiff could find suitable employment were she to make a reasonable effort with regard to job searches.
12. Stephen Carpenter, vocational consultant hired by plaintiff, stated his opinion that plaintiff is not employable and needs remedial education and vocational retraining. Mr. Carpenter did no job search for plaintiff and did not specify any particular areas of vocational retraining that would assist plaintiff in returning to gainful employment. The Commission gives greater weight to the opinions of Mr. Ratliff regarding plaintiff's ability to return to gainful employment.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has not met her burden of proving that she is totally incapable of earning wages. Demery v. Converse, Inc., 138 N.C. App. 243,250, 530 S.E.2d 871, 875 (2000). To receive compensation for permanent total disability, a workers' compensation claimant must show that she is totally unable to earn wages which she was receiving at time of injury in the same or any other employment, and reduction in wages resulting from compensable injury will only support permanent partial disability and not total disability. Id. at 250, 530 S.E.2d at 875.
2. Vocational rehabilitation is appropriate at this time as governed by the Workers' Compensation Act and the North Carolina Industrial Commission Rules for the Utilization of Rehabilitation Professionals in Workers' Compensation Claims. N.C. Gen. Stat. § 97-25.
3. Plaintiff unilaterally terminated vocational rehabilitation on June 15, 2001 without an order of the Industrial Commission. Defendants are entitled to suspend payments of workers' compensation benefits as of June 15, 2001 until plaintiff complies with vocational rehabilitation. N.C. Gen. Stat. § 97-25.
4. Jim Ratliff, rehabilitation consultant, is currently providing vocational rehabilitation services and shall continue in that capacity. In the event that plaintiff has any objection to the assignment of Mr. Ratliff to her case, the proper procedure to be followed is for plaintiff's counsel to file with the Commission a motion to remove the rehabilitation professional, showing good cause for said motion. Rule IX, N.C.I.C. Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims.
5. Plaintiff's appeal from the administrative decision allowing defendants' Form 24 application is not properly before the Full Commission at this time.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for permanent and total disability compensation is hereby DENIED.
2. Plaintiff's compensation for temporary total disability compensation shall be suspended beginning June 15, 2001 and continuing until such refusal ceases. As soon as plaintiff notifies defendants that she is willing to cooperate with vocational rehabilitation efforts, defendants shall immediately reinstate payment of compensation to plaintiff.
3. Plaintiff shall have 15 days following the issuance of this Opinion and Award from which to request a hearing before a Deputy Commissioner to appeal the administrative decision allowing the Form 24 application. If such a request is made, a hearing shall be set before a Deputy Commissioner on an expedited basis.
4. The parties shall pay their own costs.
This the ___ day of May 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER